UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No. 6:18-CV-291-CHB |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| BALIS CAMPBELL, INC., et al., | ) ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is before the Court on the parties' briefs, [R. 42, 43, 45, 46], responding to this Court's Memorandum Opinion and Order, [R. 29], in which the Court directed the parties to address the issue of whether the Court should exercise its discretion to accept jurisdiction under the Declaratory Judgment Act, 28 U.S.C. § 2201. In its brief, Defendant Balis Campbell, Inc. ("Balis Campbell") also moved the Court to dismiss the present action [R. 43]. For the reasons set forth herein, the Court will decline to exercise jurisdiction under the Declaratory Judgment Act and will grant Balis Campbell's Motion to Dismiss.

## I. BACKGROUND

### A. Knott Circuit Court Action

The underlying state court action stems from certain construction and repairs to the roof of an auditorium at The Cordia School in Knott County, Kentucky. The building is owned by Lotts Creek Community School, Inc. ("Lotts Creek"). [R. 1-2, ¶ 1] According to the state court complaint (and amended complaint), people at the school grew concerned of an impending roof collapse in July 2017. [R 30-1, ¶ 5; R. 30-2, ¶ 3]  Lotts Creek then made a claim against its insurer, Certain Underwriters of Lloyds of London International Insurance Company of Hanover

("Lloyds of London"), which authorized temporary emergency repair work to prevent a roof collapse. [R. 30-1, ¶¶ 6–7]  Balis Campbell, a construction company, had performed certain construction work on the original building several years ago and also performed the emergency repair work. *Id.* ¶ 8; [R. 30-2, ¶ 2] Balis Campbell then sent Lotts Creek an invoice for $50,476.52. [R. 30-1, ¶ 8]  Lloyds of London ultimately denied Lotts Creek's request to compensate Balis Campbell and also denied Lotts Creek's claim for permanent repair work to the roof, the estimated cost of which was $876,700. *Id.* ¶¶ 10–11.

On October 20, 2017, Lotts Creek filed the underlying state court action against Lloyds of London and Balis Campbell [R. 1-1].[1] In its original complaint, Lotts Creek sought a declaratory judgment regarding Lloyds of London's coverage obligations under its insurance policy with Lotts Creek. Specifically, the complaint sought a declaratory judgment that Lloyds of London is "legally responsible for the debt owed to Balis Campbell, Inc.," referring to the $50,476.52 for temporary repair work, and a declaratory judgment that Lloyds of London "breached their insurance policy" and "compelling [Lloyds of London] to pay the estimate of $876,700 so repairs can be done." *Id.* at 3–4. Lotts Creek also alleged that Lloyds of London had violated Kentucky's Unfair Claims Settlement Practices Act.  *Id.* at 4. Lotts Creek named Balis Campbell as a defendant but did not assert any claims against it in the original complaint. *See id.* ¶ 3 (describing Balis Campbell as an "indispensable party who is owed monies in the amount of $50,476.52 for services [it] expended relevant to the instant litigation").

---

[1] Frankenmuth attached to its original declaratory judgment complaint [R. 1] a copy of the original Knott Circuit Court complaint [R. 1-1] and its amended version [R. 1-2]. To its amended declaratory judgment complaint [R. 30], Frankenmuth attached the same documents [R. 30-1, R. 30-2], but the copy of the Knott Circuit Court original complaint [R. 30-1] is missing pages. Accordingly, in some parts of this opinion, the Court refers to the original complaint attached to the original declaratory judgment action [R. 1-1].

Lotts Creek eventually reached a settlement agreement with Lloyds of London, and an agreed order of settlement was entered on May 7, 2018. [R. 19, p. 2] On that same day, Lotts Creek moved to amend its complaint to add claims against Balis Campbell for negligent repair work, resulting in certain property damage, a diminution in the value of the building, and other damages. [R. 30-2]  More specifically, Lotts Creek alleges that Balis Campbell's invoice for $50,476.52 for the emergency repair work "is improper," and further alleges that the emergency roof bracing work performed by Balis Campbell "was inadequate, negligent and has caused a diminution in value of the building." *Id.* ¶ 5. Lotts Creek also alleges that Balis Campbell's "initial inspections and repairs of the roof were inadequate," resulting in damages, subsequent repair costs, and a diminution of the building's value. *Id.* ¶ 6.  Lotts Creek further stated that Balis Campbell's "actions have caused collateral damage to [Lotts Creek] in the fact that the Kentucky Department of Education and Knott School Board made attempts to close the school which was substantially related to the poor construction and repairs." *Id.* ¶ 7.

### B.  The Present Action

Frankenmuth Mutual Insurance Company ("Frankenmuth"), Balis Campbell's insurer, is not a party to the underlying state court action, nor has it attempted to intervene in that action. On November 13, 2018, Frankenmuth filed this declaratory judgment action against Balis Campbell and Lotts Creek, seeking a declaratory judgment regarding its obligations to defend and indemnify Balis Campbell in the Knott Circuit Court action. [R. 1] Specifically, Frankenmuth asserts that there is a dispute over whether the claims against Balis Campbell in the state court action are covered events under the insurance policy. [R. 30, ¶ 13]

As described by Frankenmuth, the policy provides Commercial General Liability ("CGL") coverage and Commercial Umbrella coverage. *Id.* at ¶ 16. Under both the CGL and the

- 3 -

Commercial Umbrella coverage, Frankenmuth is liable for damages due to "property damage," so long as it is caused by an "occurrence" that takes place in the covered territory and during the policy period. *Id.* at 5–6, 11–12. An "occurrence" is defined as an "accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 9, 15. The policy also provides Endorsement Contractors Liability Plus coverage, or Contractor's Plus Endorsement coverage. *Id.* at 16. Under that provision, coverage is provided specifically for "faulty workmanship, material, design or products," up to $25,000. *Id.* at 17, 21.

In its brief, Frankenmuth clarifies that it seeks a determination that there is no coverage under the CGL policy and Commercial Umbrella policy for the alleged negligent construction and/or repair as these do not qualify as "occurrences." [R. 42, p. 4]. In its response brief, Frankenmuth further clarifies that it seeks a determination that it has no duty to defend Balis Campbell under the CGL and/or umbrella policy, but it does *not* seek a determination regarding the duty to indemnify under this policy. [R. 46, p. 3]  As for the Contractor's Plus Endorsement, Frankenmuth concedes that there exists a duty to defend under that endorsement, but contends that any duty to indemnify under that provision is limited to $25,000, which must be reduced by defense costs. *Id.*; [R. 42, p. 5] Thus, Frankenmuth seeks a declaration as to the amount of indemnification available under the Contractor's Plus Endorsement and whether that amount can be reduced by defense costs, as well as a declaration that its defense counsel may withdraw from the state court action once that amount is exhausted by defense costs. [R. 46, p. 3; R. 42, p. 5].

On March 18, 2019, after Balis Campbell and Lotts Creek[2] filed their answers to the declaratory judgment complaint, the Court held a status conference. [R. 16] The Court thereafter

---

[2] Frankenmuth states in its complaint that "Lotts Creek is named as a party herein and is given notice of this action in that the insurance proceeds might not be available to satisfy damages awarded in its favor in the underlying action." [R. 1, ¶ 12]. In response to the Court's Memorandum Opinion and Order [R. 29], Lotts Creek responded,

ordered Frankenmuth to file a brief in support of its assertions that the amount in controversy satisfied diversity jurisdiction requirements. *Id.* Balis Campbell then filed a Motion to Dismiss for Lack of Jurisdiction, asserting that the amount in controversy did not exceed $75,000, and the Court therefore lacked subject matter jurisdiction under 28 U.S.C. § 1332. [R. 22] Shortly thereafter, Frankenmuth moved to amend its complaint to clarify the amount in controversy. [R. 24] The Court ultimately entered a Memorandum Opinion and Order in which it granted Frankenmuth leave to amend its complaint and denied Balis Campbell's Motion to Dismiss. [R. 29] In that same opinion, the Court ordered the parties to brief the issue of whether the Court should exercise its discretion to accept jurisdiction under the Declaratory Judgment Act. *Id.* at 10.  The parties have fully briefed this issue [R. 42, 43, 45, 36], and Balis Campbell has also moved to dismiss the matter, arguing that the facts of this case weigh against the exercise of jurisdiction [R. 43].

## II. ANALYSIS

The Declaratory Judgment Act provides that, "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). As the use of the permissive "may" suggests, "a district court's ability to hear an action under the Declaratory Judgment Act does not compel it to do so." *Grange Mut. Ins. Co. v. Safeco Ins. Co. of America*, 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494–95 (1942)). Rather, "this act '[c]onfers on federal courts unique and

---

describing itself as a "neutral bystander" that "take[s] no position as to how the Court should rule on pending motions." [R. 31].

substantial discretion in deciding whether to declare the rights of litigants.'" *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)).

However, "[d]istrict courts must exercise this discretion cautiously." *Id.*; *see also W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (explaining that Court's discretion under the Declaratory Judgment Act "must not be unguided"). As this Court previously explained, "We are, after all, courts of limited jurisdiction. And, if our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Grange*, 565 F. Supp. 2d at 785 (internal citations omitted). The Sixth Circuit has similarly "cautioned district courts not to jump into the middle of ongoing litigation," noting that "declaratory judgment actions seeking an advance opinion of indemnity issues are seldom helpful in resolving an ongoing action in another court." *Id.* (quoting *Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004)) (internal quotation marks omitted). Nevertheless, "no per se rule exists against exercising jurisdiction" under the Declaratory Judgment Act. *Id.* (citing *Bituminous*, 373 F.3 at 812–13).

The Sixth Circuit has identified two general principles to determine whether it would be appropriate to accept jurisdiction over a declaratory judgment action:

> The two principal criteria guiding the policy in favor of rendering declaratory judgments are (1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. It follows that when neither of these results can be accomplished, the court should decline to render the declaration prayed.

*Grand Trunk Western R. Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984) (citation omitted). With these general principles in mind, the Sixth Circuit articulated five factors to guide district courts as they consider whether to exercise jurisdiction under the Declaratory Judgment Act:

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;"

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted). The Court considers each of the *Grand Trunk* factors in turn.[3]

## A. Factor One

The first *Grand Trunk* factor asks "whether the declaratory action would settle the controversy." *Id.* In the Sixth Circuit, "[t]wo lines of precedent seem to have developed in our jurisprudence regarding consideration of this first factor in the context of an insurance company's suit to determine its policy liability." *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 555 (6th Cir. 2008). The key distinction between these two lines of precedent is whether the declaratory action must settle the controversy in the state court action, or whether it need only settle the insurance coverage dispute. Some cases hold that "a declaratory relief action can settle the insurance coverage controversy not being addressed in state court, even though it will not help resolve the underlying state court action." *Id.* (citations omitted). "A different group of cases, however, has found that, while such declaratory actions might clarify the legal relationship between the insurer and the insured, they do not settle the ultimate controversy between the parties which is ongoing in state court. *Id.* (citations omitted).

The Sixth Circuit has examined the reasoning for this split:

---

[3] In its brief, Frankenmuth notes that Balis Campbell conceded that diversity jurisdiction exists. [R. 42, p. 3] However, the Court has already determined that subject matter jurisdiction exists in this case. [R. 29] Furthermore, "federal jurisdiction under [the Declaratory Judgment Act] is not the same as diversity or federal question jurisdiction because the statute 'confer[s] on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants.'" *Certain Underwriters at Lloyd's, London v. Abundance Coal, Inc.*, No. 12-39-ART, 2012 WL 3067579 (E.D. Ky. July 27, 2012) (quoting *Wilton*, 515 U.S. at 286). Thus, even where diversity jurisdiction exists, the Court may still decline to exercise discretionary jurisdiction under the Declaratory Judgment Act.

The difference between these lines of cases appears to rest on the competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible. However, the contrary results in these cases might also be explained by their different factual scenarios. In [*Bituminous Casualty Corporation v. J & L Lumber Co.*] for example, the insurance company sought a declaration that it was not required to defend or indemnify the defendant in a state court action based on a logging accident which injured one of its employees. In evaluating this first discretionary factor, we focused on the fact that the insurance coverage controversy rested on a fact-based question of state law regarding whether the plaintiff in the state action was actually an employee of the defendant. We noted that the question of employment status was already being considered in two separate state court proceedings. We also registered our concern that the plaintiff in the state tort action "was not made a party to the declaratory judgment action [and thus] any judgment in the federal court action would not be binding as to him and could not be res judicata in the tort action." Considering these facts, we found that "a declaration of insurance coverage would not resolve the controversy."

In [*Northland Insurance Co. v. Stewart Title Guaranty Co.*, 327 F.3d 448 (6th Cir. 2003)] we did not face similarly troubling facts. The plaintiff in that case sought a declaration of no duty to defend or indemnify the insured title company against a title insurance underwriter's state court claims for embezzlement and conversion. In determining that the exercise of jurisdiction was proper, we noted that the plaintiff "was not a party to the state court action and neither the scope of the insurance coverage nor the obligation to defend was before the state court." We relied on these facts to find that a declaratory judgment would resolve the insurance coverage controversy and would clarify the legal relations at issue.

*Id.* at 555–56 (internal citations omitted).[4] Thus, this factor presents competing policy considerations and a case-specific inquiry.

Before considering this factor, the Court must first clarify the scope of the declaratory judgment requested in this case. According to Frankenmuth, it asks the Court to determine whether it owes a duty to *defend* Balis Campbell under the CGL/umbrella policy and whether the

---

[4] This Court has also examined the approach in *Grange* and *Abundance Coal*. In *Grange*, the Court reviewed Sixth Circuit case law and ultimately "adopt[ed] an approach that is not wholly consistent with either of the two lines of precedent." 565 F. Supp. 2d at 788.  The Court "interpret[ed] the first factor to ask whether the ultimate controversy is settled by the federal action and interpret[ed] the second to ask whether the federal action can clarify the legal relations of at least two parties and settle at least one discrete issue." *Id.* The Court adopted a similar approach in *Abundance Coal*, first asking whether a declaratory judgment would settle the ultimately controversy in the state court proceeding, No. 12-39-ART, 2012 WL 3067579 at *3, then asking whether the case would "serve a truly 'useful purpose' by clarifying legal relationships among the parties." *Id.* at *6 (citations omitted). However, the Sixth Circuit has not expressly adopted this approach.

duty to defend under the Contractor's Plus Endorsement is extinguished after the $25,000 coverage limit is exhausted by defense costs. [R. 42, p. 4; R. 46, p. 3] Frankenmuth expressly states that it does *not* seek a determination of its obligations to *indemnify* Balis Campbell under the CGL/umbrella policy. [R. 46, p. 3] The Court is concerned by Frankenmuth's characterization of its declaratory relief request. First, in its amended complaint for declaratory relief, Frankenmuth very clearly asked this Court to declare "that Frankenmuth has no obligation to *defend or indemnify* Balis Campbell, Inc. under the subject Policy of insurance in connection with the underlying action." [R. 30, p. 23 (emphasis added)] Furthermore, the specific question that this Court must decide is whether the state court claims of negligent workmanship (and potentially ancillary damages) against Balis Campbell qualify as an "occurrence" under the insurance policy, thereby triggering coverage. *Id.* at 22. Under the terms of the policy, that question affects Frankenmuth's obligations to defend *and* indemnify. *See Nautilus Ins. Co. v. Structure Builders & Riggers Mach. Moving Div., LLC*, 784 F. Supp. 2d 767, 771 (E.D. Ky. 2011) ("If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader." (citation omitted)). Thus, the resolution of that question does more than just determine the obligation to defend; it also potentially affects the question of whether Frankenmuth is obligated to indemnify Balis Campbell. However, the Court will accept Frankenmuth's characterization of its declaratory relief request and will address the five *Grand Trunk* factors with the understanding that, with respect to the CGL/umbrella policy, Frankenmuth seeks only a determination that it owes no duty to defend Balis Campbell.

Having clarified the scope of this action, the Court turns to the first *Grand Trunk* factor. Frankenmuth argues that this factor weighs in favor of exercising jurisdiction because the insurance coverage question is a purely legal one; it does not turn on a fact-based question of

state law. Frankenmuth contends that the Court could resolve this question by turning to settled state law on what constitutes an "accident" (and therefore an "occurrence") under traditional CGL policies. *See Martin/Elias Properties, LLC v. Acuity*, 544 S.W.3d 639, 643–42 (Ky. 2018); *American Mining Ins. Co. v. Peters Farm, LLC*, 557 S.W.3d 293 (Ky. 2018); *Cincinnati Ins. Co. v. Motorists Mutual Ins. Co.*, 306 S.W.3d 69, 75–76 (Ky. 2010). Frankenmuth—relying on its assertion that it does not seek a declaration of its obligations to indemnify—argues that this question must be answered by looking at the state court complaint allegations and the insurance policy. [R. 42, p. 13 (citing *United Specialty Ins. Co. v. Cole's Place, Inc.*, 936 F.3d 386, 400 (6th Cir. 2019)]

A closer look at the cited insurance case law indicates that the inquiry is more fact-specific than Frankenmuth suggests. These cases instruct courts to analyze the "accident" question "according to the doctrine of fortuity: 1) whether the insured intended the event to occur; and 2) whether the event was a 'chance event beyond the control of the insured.'" *Martin/Elias*, 544 S.W.3d at 643 (quoting *Cincinnati Ins.*, 306 S.W.3d at 76) (internal quotation marks omitted).  Under this analysis, "[i]f the insured did not intend the event or result to occur, and the event or result that occurred was a chance event beyond the control of the insured, then CGL coverage covering *accidents* will apply to the benefit of the insured." *Id.*  Thus, whether Frankenmuth must ultimately indemnify Balis Campbell depends on "two aspects of fortuity: intent and control." *Id.* at 642. These two considerations potentially involve fact-based inquiries relevant to the analysis.[5]

---

[5] Though the garden variety negligent construction case (in the absence of other allegations affecting the analysis) likely does not constitute an "accident" or "occurrence" under the policy, Kentucky law appears less clear where, for instance, the contractor's work may have been affected by a defective product beyond the insured's control. *See Arrowood Indemnity Co. v. The Drees Co., et al.,* No. 14-169-DLB, 2015 WL 136107 (E.D. Ky. January 9, 2015); *Westerfield Ins. Co., v. B.H. Green & Son, Inc.*, No. 5:11-cv-010-TBR, 2013 WL 5278243 (W.D. Ky. Sept. 18, 2013). Further, it remains an open question under Kentucky law whether coverage would apply "if the faulty workmanship caused bodily injury or property damage to something other than the insured's allegedly faulty work

However, the Court agrees that, because it is only determining the obligation to defend under the CGL/umbrella policy, it would only need to look to the allegations in the state court complaint and the terms of the policy. *See United Specialty*, 936 F.3d at 400. In other words, it would not have to make any factual determinations (or rely on the state court's factual determinations); instead, the Court would look to the facts *as alleged* in the state court complaint to determine if the alleged conduct qualified as an "occurrence" that triggers the duty to defend. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991) (explaining that the insurer's duty to defend is triggered if there is any allegation in the complaint that could possibly fall within the scope of the policy's coverage).

Thus, given the narrow scope of the requested declaratory relief, "a straightforward application of clear state law settles the issue of insurance coverage." *United Specialty Ins.*, 936 F.3d at 398.  Furthermore, "there is no pending state proceeding in which the coverage issue, or a question of fact or of state law relevant to the coverage issue, is being litigated." *Id.* Lastly, the Court notes that, unlike the state court plaintiff in *Bituminous*, the parties to the Knott Circuit Court litigation (Lotts Creek and Balis Campbell) are both before this Court.  Thus, this Court's declaratory judgment would have a "binding effect on most, if not all, parties potentially financially affected." *Id.* at 397–98. Even so, "competing policy considerations of consolidating litigation into one court versus permitting a party to determine its legal obligations as quickly as possible" counsel against exercising discretion. *Flowers*, 513 F.3d at 555; *see also Grange*, 565 F. Supp. 2d at 788–89 (acknowledging that a federal declaratory action would resolve the discrete question before the Court but recognizing that it would not "settle the ultimate

---

product." *Martin/Elias*, 544 S.W. 3d at 643 (quoting *Cincinnati Ins.*, 306 S.W. 3d at 80, n.45) (internal quotation marks omitted). Nevertheless, for purposes of the Court's analysis in this case, the Court will accept Frankenmuth's argument that Kentucky law is settled with respect to the issues presented.

controversy"); *infra* Section II(F). Nevertheless, with these considerations in mind, the Court finds that the first *Grand Trunk* factor weighs slightly in favor of exercising jurisdiction.

### B. Factor Two

Factor two considers "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue." *Grand Trunk*, 746 F.2d at 326. This factor "is closely related to the first factor and is often considered in connection with it." *Flowers*, 513 F.3d at 557 (citing *Travelers Indem. Co. v. Bowling Green Prof. Assoc., PLC*, 495 F.3d 266, 271–72 (6th Cir. 2007)). "Indeed, it is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Id.* (citing *Biuminous*, 373 F.3d at 814; *Northland*, 327 F.3d at 454). As with the first factor, a split has developed among Sixth Circuit jurisprudence "concerning whether the district court decision must only clarify the legal relations presented in the declaratory judgment action or whether it must also clarify the legal relations in the underlying state action." *Id.* (citations omitted). In *Flowers*, the Sixth Circuit found "the former line of precedent to be more persuasive than the latter." *Id.* It explained,

> The requirement that the judgment clarify the legal relationships of the parties is based upon our desire for the declaratory judgment to provide a final resolution of the discrete dispute presented. While the parties may have other tortious or contractual relationships to clarify in state court, our concern in considering the second *Grand Trunk* factor in such cases is with the ability of the federal declaratory judgment to resolve, once and finally, the question of the insurance indemnity obligation of the insurer. Thus, we focus only on whether a federal declaratory judgment will clarify the legal relationships presented to the district court.

*Id.*

Thus, in *Flowers*, the Court found that the second factor supported the district court's exercise of jurisdiction, as it clarified the legal relations at issue in that case—"namely, the contractual duties of indemnification owed by [the insurance company] to the [declaratory

defendant]." *Id.* The Court noted that, "[w]hile [the declaratory action] did not clarify all of the legal relationships at issue in the state court action, the district court's decision did not create any confusion about the resolution of those issues," nor would it "confuse the state court's analysis of [the] liability issues." *Id.* In more recent decisions, the Sixth Circuit again affirmed the lower courts' exercise of jurisdiction, finding no abuse of discretion as to the second *Grand Trunk* factor where the declaratory action clarified the legal relationships of the parties to the declaratory action, but not the state court litigation. *See United Specialty*, 936 F.3d at 398–99; *Massachusetts Bay Ins. Co. v. Christian Funeral Directors, Inc.*, 759 Fed. App'x 431, 438 (6th Cir. 2019).

In this case, the requested declaratory judgment will resolve certain coverage issues between Frankenmuth and Balis Campbell, namely whether there is any coverage under the CGL/umbrella policy and the scope of the coverage available under the Contractor's Plus Endorsement. Resolution of these coverage questions will not resolve the underlying liability issues presently before the Knott Circuit Court. *Flowers*, 513 F.3d at 557. Those issues focus on whether Balis Campbell negligently constructed and/or repaired the Lotts Creek roof (and potentially caused other ancillary damages), and they are not dependent on this Court's resolution of the coverage issues. Although the declaratory judgment will "not resolve the relative rights of all parties in the state-court litigation, it does determine whether the insurer must continue defending the insured party." *United Specialty*, 936 F.3d 399. Resolution of those coverage questions will not complicate or confuse the state court liability issues. *Flowers*, 513 F.3d at 557. For these reasons, and under the Sixth Circuit's decision in *Flowers* and recent

decisions like *United Specialty*, the Court finds this action will clarify the legal relations of the parties in this case, and this factor therefore weighs in favor of exercising jurisdiction.[6]

### C. Factor Three

The third *Grand Trunk* factor asks whether the declaratory judgment action "is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata.'" *Grand Trunk*, 746 F.2d at 326. Typically, "[f]iling a declaratory judgment action in a forum separate from the underlying litigation is not considered improper by itself." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Flowers*, 513 F.3d at 558). However, plaintiffs who file their suits only days or weeks before the corresponding state court action is filed, "and who seem to have done so for the purpose of acquiring a favorable forum," are subject to scrutiny under this factor. *Flowers*, 513 F.3d at 558 (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted). In other words, this factor asks "whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* (quoting *Dale*, 386 F.3d at 789) (internal quotation marks omitted).

Typically, courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record." *Id.* (citations omitted). When no such evidence exists, courts

---

[6] The Court is mindful that this Court previously found in *Abundance Coal* that the declaratory action would clarify the legal relationships among the parties, but it nevertheless found that this factor weighed in favor of dismissal, stressing that the declaratory judgment must "serve a truly 'useful purpose' by clarifying the legal relationships among the parties." No. 12-39-ART, 2012 WL 3067579 at *6 (citations omitted). The Court explained:

> Resolving the declaratory judgment action may clarify the legal relations between [the parties]. But that clarification must also serve a "useful purpose." *See* [*AmSouth Bank v. Dale*, 386 F.3d 763, 786 (6th Cir. 2004)]. The state court can also clarify these very same issues—and probably do so more ably given its state-law expertise. *See id.* [Insurance company] does not offer any reason why it will "suffer injury unless legal relations are clarified" here rather than in state court. *Id.* And the Court can think of none. Ultimately, keeping this case would do little but cause [the two parties] "to engage in litigation on two fronts." *Grange*, 565 F. Supp. 2d at 785 (citing *Panhandle E. Pipe Line Co. v. Mich. Consol. Gas. Co.*, 177 F.2d 942, 944 (6th Cir. 1949)).

*Id.* at *6.

often give the "benefit of the doubt" to the declaratory plaintiff and find that the third factor is neutral. *See, e.g.*, *Bituminous*, 373 F.3d at 814. The Sixth Circuit has also noted that "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272); *see also United Specialty*, 936 F.3d at 399 (explaining that this factor "usually does not weigh heavily in the analysis").  Stated another way, "the lack of improper motive in filing alone cannot justify the exercise of jurisdiction when all the other factors weigh on the side of declining." *Bituminous*, 373 F.3d at 817 (citation omitted).

In the present case, Frankenmuth argues that there is no evidence of procedural fending, noting that the federal declaratory action was not filed until several months after the filing of Lotts Creek's Amended Complaint in Knott Circuit Court. [R. 42, p. 11–12]. Balis Campbell acknowledges that there is no direct evidence of an improper motive but argues that Frankenmuth was aware of the pending suit in Knott Circuit Court and could have easily filed for declaratory relief in that court. [R. R. 43, p. 10–11]. Balis Campbell therefore argues that the third factor is, at best, neutral.

The Court agrees that there is no evidence of procedural fencing in this action. The present declaratory action was filed approximately six months after the amended complaint was filed in the Knott Circuit Court action. Though Frankenmuth was aware of the pending state court action and could have attempted to file for declaratory relief in state court, it was not obligated to do so. *See Flowers*, 513 F.3d at 558 ("While this action may have been an attempt to preempt an issue which the state court would eventually consider, the Declaratory Judgment Act gives Scottsdale the right to do precisely that, especially when the state court litigation has been ongoing for several years without resolving the issue."). The Court will therefore give the benefit

of the doubt to Frankenmuth that there was no improper motive behind its filing. However, as noted above, "this factor should be afforded little weight in cases where . . . there is no evidence of procedural fencing." *Massachusetts Bay*, 759 Fed. App'x at 439 (citing *Travelers*, 495 F.3d at 272). Accordingly, this third factor is neutral, and the Court will afford it little weight.

### D. Factor Four

The fourth factor asks "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction." *Grand Trunk*, 746 F.2d at 326. Like factors one and two, this factor focuses on the presence of novel or complicated state law or factual issues. *See, e.g.*, *United Specialty*, 936 F.3d at 400 ("For purposes of the fourth *Grand Trunk* factor, it is important simply to note that the question does not involve novel or complicated state-law or factual issues."). On this point, the Supreme Court has warned that "a district court might be indulging in '[g]ratuitous interference'" if it permits a federal declaratory relief action to proceed when "another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court." *Flowers*, 513 F.3d at 559 (quoting *Wilton*, 515 U.S. at 283). "However, 'the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction.'" *Id.* at 560 (quoting *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987)).

The Sixth Circuit has identified three subfactors to aid courts in considering this factor:

(1)  whether the underlying factual issues are important to an informed resolution of the case;
(2)  whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(3)  whether there is a close nexus between underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

- 16 -

*Bituminous*, 373 F.3d at 814–15 (citing *Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000)); *see also United Specialty*, 936 F.3dat 396 (reciting the three subfactors). The Court addresses each subfactor in turn.

### i.    Subfactor 1

Under the first subfactor, the Court must consider "whether the underlying factual issues are important to an informed resolution of the case." *Id.* at 814 (citing *Roumph*, 211 F.3d at 968) As this Court has explained,

> [w]hen the liability issues central to the state court proceeding are distinct from those central to the federal court proceeding, federal jurisdiction is appropriate, but when "the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court," the Court should decline to exercise its jurisdiction.

*Grange*, 565 F. Supp. 2d at 789 (citing *Flowers*, 513 F.3d at 560). For example, in *Flowers*, the parties agreed that the issues raised in the federal declaratory action were distinct from those raised in the state court litigation. *Flowers*, 513 F.3d at 560. Because the issues were distinct, that subfactor weighed in favor of exercising jurisdiction. *Id.*; *see also Grange*, 565 F. Supp. 2d at 789. Similarly, in *United Specialty*, the Sixth Circuit found this factor to weigh in favor of exercising jurisdiction because a comparison of the state court complaint and the federal declaratory judgment complaint revealed "no as-yet-unresolved factual issues [in the state court case] that stand between [the] federal court and its informed resolution of the coverage question." 936 F.3d at 400. On the other hand, if the declaratory judgment action is dependent on factual findings that will be made by the state court or an unresolved question of state law, this subfactor weights against exercising jurisdiction. *See Massachusetts Bay*, 759 Fed.Appx. at 439–440; *Bituminous*, 373 F.3d at 815; *Travelers*, 495 F.3d at 272.

In this case, Frankenmuth argues that there are no factual issues in the state court proceeding that will have any bearing on this declaratory action. [R. 42, p. 13] Rather, Frankenmuth argues, the coverage issues in this action are strictly legal questions that the Court must resolve based on the language of the state court complaint and the insurance policy. *Id.* Because Frankenmuth has limited its declaratory relief to the duty to defend, as discussed above, the Court agrees. The question of whether Frankenmuth is obligated to defend Balis Campbell under the CGL/umbrella policy (and whether the $25,000 limit under the endorsement can be exhausted by defense costs) should be resolved based on the terms of the policy and the allegations in the state court complaint. *See James Graham Brown*, 814 S.W.2d at 279 (explaining that the insurer's duty to defend is triggered if there is any allegation in the complaint that could possibly fall within the scope of the policy's coverage). Thus, as in *Grange*, *United Specialty*, and *Flowers*, this case is not dependent on the factual findings of the state court. Furthermore, the coverage issues are not before the state court; they are separate and distinct issues from the liability issues litigated in Knott Circuit Court. Accordingly, this subfactor weighs in favor of exercising jurisdiction.

### ii.    Subfactor 2

The second subfactor asks "whether the state trial court is in a better position to evaluate those factual issues than is the federal court." *Bituminous*, 373 F.3d at 814 (citing *Roumph*, 211 F.3d at 968). This subfactor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Typically, this subfactor weighs in favor of exercising jurisdiction "when the state law is clear and when the state court is not considering the issues." *Id.* For example, "when an insurance company '[is] not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend

[is] before the state court . . . a decision by the district court on these issues would not offend principles of comity.'" *Id.* (quoting *Northland*, 327 F.3d at 454). However, when the declaratory action involves novel issues of state law, it usually weighs against jurisdiction because "[w]e generally consider state courts to be in a better position to evaluate novel questions of state law." *Id.* (citing *Travelers*, 495 F.3d at 272). However, "novelty is not the only concern." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4 (holding that while the state-law questions were not particularly novel, "this case involves only questions of state law . . . indicat[ing] the possibility of friction with the state court"). In some cases, the Sixth Circuit has placed greater emphasis on the state court's superior ability to resolve questions of state law, "without immediately pointing to the novelty of the state law issues." *Id.* (citing *Bituminous*, 373 F.3d at 815).

On this point, the Court notes that there are no novel state law or fact issues to be resolved in this declaratory relief action, and these coverage issues are not before the state court, nor is Frankenmuth a party to the state court action. These facts weigh in favor of exercising jurisdiction. *See Grange*, 565 F. Supp. 2d at 790. However, "novelty is not the only concern," as noted above. *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *4. The present case presents a question of state law, novel or not, and the state court's superior ability to apply its own law weighs against exercising jurisdiction. *See Grange*, 565 F. Supp. 2d at 790 ("Since this is an insurance action, the state court is better situated to decide the issue, weighing against jurisdiction."). Thus, subfactor two weighs in favor of jurisdiction to the extent this case lacks any novel state law issues (and the state court is not considering the issues), but it weighs against jurisdiction because it raises only issues of state law, which the state courts are in a better position to apply. *Id.*; *see also United Specialty*, 936 F.3d at 401 (noting that although the

"general presumption" that state courts are in a better position to decide state law questions has

less force when the state law is clear and the state court is not considering the issues, "that does

not necessarily mean that the concern is completely dispelled in these circumstances").

Accordingly, this subfactor is, at best, neutral.

### iii.    Subfactor 3

Under the third subfactor, the Court must consider "whether there is a close nexus

between underlying factual and legal issues and state law and/or public policy, or whether

federal common or statutory law dictates a resolution of the declaratory judgment action."

*Bituminous*, 373 F.3d at 814–15 (citing *Roumph*, 211 F.3d at 968).  In other words, this subfactor

"focuses on whether the issue in the federal action implicates important state policies and is,

thus, more appropriately considered in state court." *Flowers*, 513 F.3d at 561. For example, in

cases involving insurance contract interpretation issues, the Sixth Circuit has held that such

issues are "questions of state law with which the Kentucky state courts are more familiar and,

therefore, better able to resolve." *Id.* (quoting *Travelers*, 495 F.3d at 273) (internal quotation

marks omitted). This is true because "[t]he states regulate insurance companies for the protection

of their residents, and state courts are best situated to identify and enforce the public policies that

form the foundation of such regulation." *Id.* (quoting *Bituminous*, 373 F.3d at 815) (internal

quotation marks omitted); *but see Northland*, 327 F.3d at 454 (finding that the Court's exercise

of jurisdiction would not create friction between the state and federal courts).

This Court finds that this case implicates state policy that could be frustrated by the

exercise of jurisdiction. As the Sixth Circuit explained in *Flowers*, "[i]nterpretation of Kentucky

insurance contracts is guided by state public policy. Despite the clear indications from the

Kentucky courts regarding how such an issue should be resolved, Kentucky courts are in a better

position to resolve the insurance policy interpretation in this case." 513 F.3d at 561. This Court agrees with that analysis, and the Sixth Circuit recently endorsed it in *United Specialty*, holding that "even in cases where state law has not been difficult to apply, this court has usually found that the interpretation of insurance contracts is closely entwined with state public policy." 936 F.3d at 401. The nexus between the legal issues in this case and state policy is clear. Relatedly, the *lack* of nexus between the state law issues presented and the federal forum is obvious—"[n]o federal-law questions are involved in the coverage issue" before the Court. *Id.*; *see also Massachusetts Bay* at 441 ("[N]o federal laws are at issue."). This case does not turn on federal law, but rather Kentucky's interpretation of its insurance contracts—state law that is "guided by state public policy." *Flowers*, 513 F.3d at 561. This subfactor therefore weighs strongly against exercising jurisdiction.

In sum, the first subfactor weighs in favor of exercising jurisdiction; the second subfactor is neutral; and the third subfactor weighs strongly against exercising jurisdiction. The fourth *Grand Trunk* factor is therefore best described as neutral or weighing slightly against exercising jurisdiction.

### E.  Factor Five

The final *Grand Trunk* factor asks "whether there is an alternative remedy which is better or more effective." *Grand Trunk*, 746 F.2d at 326. In many cases involving similar insurance coverage issues, the Sixth Circuit has held that an alternative remedy is available through a declaratory judgment under state law or an indemnity action in the state court at the conclusion of the liability proceedings. *See, e.g.*, *United Specialty*, 936 F.3d at 401–01; *Massachusetts Bay*, 759 Fed. App'x at 441–42; *Travelers*, 495 F.3d at 273; *Bituminous*, 373 F.3d at 816–17; *Manley, Bennett, McDonald & Co. v. St. Paul Fire & Marine Ins. Co.*, 791 F.2d 460, 462–63 (6th Cir.

1986). In those cases, the Court noted that the coverage issues involved questions of state law; they did not require application of federal common or statutory law. However, the Sixth Circuit has also acknowledged that "it is not clear whether such alternative remedies are better or more effective than a federal declaratory action." *Flowers*, 513 F.3d at 562. On this issue, Sixth Circuit "precedent is split regarding whether the possibility of seeking a declaratory judgment or an indemnity action in state court counsels against the district court exercising jurisdiction." *Id.* (citations omitted).

However, in *Flowers*, the Sixth Circuit clarified that, "rather than applying a general rule," the relevant inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Id.* In that case, the insurer sought a declaratory judgment that it had no duty to indemnify a therapist employed by the insured, a mental health services provider, in a state emotional distress suit stemming from the therapist's sexual affair with a patient. *Id.* at 550–51. The Court noted that, under those circumstances, a state declaratory action would have been better than federal declaratory action "[i]n many ways." *Id.* For example, "Kentucky courts are in a superior position to resolve undecided questions of state law such as whether a therapist's sexual activities with his client are outside the scope of his employment." *Id.* at 562. The Kentucky courts would also have been able to combine the two actions, thereby allowing a single judge to resolve all issues. *Id.* However, the Sixth Circuit also acknowledged that Kentucky law provided clear guidance on this issue, so a federal declaratory action was not "clearly inferior." *Id.* On the other hand, an indemnity action would *not* have been a superior remedy, because the insurer had attempted to join the state court action but had been prevented from doing so. *Id.* Even if the insurer joined the state court action, it would be required to wait until the liability issues were resolved before determining its obligations to the therapist.

- 22 -

*Id.* "Such a delayed alternative would be worse, not better, than seeking a federal declaratory judgment." *Id.* More recently, however, the Sixth Circuit upheld the district court's determination that this factor weighed against exercising jurisdiction because a state court declaratory judgment action "would provide [the insurance company] with the same remedy it seeks in federal court, [and] the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401.

In the present case, Balis Campbell argues that at least two alternative remedies exist: a declaratory action in state court and an indemnity action in state court. Frankenmuth counters that Kentucky Supreme Court Rules, specifically those governing conflicts of interest, prohibit combining a declaratory action seeking a coverage determination with the underlying liability action. [R. 42, pp. 16–18] Frankenmuth also argues that KRS § 452.450 requires that a state declaratory relief action be filed in Perry County, Kentucky, where Balis Campbell is located, not Knott County, where the underlying state action currently sits. For these reasons, Frankenmuth argues that the best alternative is for this Court to exercise jurisdiction.

The Court disagrees. Frankenmuth argues that under Kentucky law, Balis Campbell's defense counsel in the state court action represents only Balis Campbell, the insured, thereby creating a conflict when the insurance company attempts to intervene for purposes of denying coverage (including coverage for defense costs). However, these potential conflicts must be examined on a case-by-case basis. In some cases, the insured's representation will not be "materially limited" by the insurance company's involvement, and the attorney can continue representing the insured. *See* Kentucky Bar Association ("KBA") Ethics Op. E-410, p. 5 (quoting former Kentucky Rule of Professional Conduct 1.7(b), now Supreme Court Rule 3.130). In other cases, the insurance company's arguments may involve facts and theories that must be

developed through the course of the attorney's representation, "and the Insurer's and the Insured's interests diverge more significantly." *Id.* Under those circumstances, "the attorney must always be vigilant to protect the client's rights and confidences and pursue the best defense for the client." *Id.* "This may require the attorney to be more adversarial in dealing with the Insurer because the Insurer may, consciously or unconsciously, desire to tilt the defense in a way to minimize its own liability." *Id.* (citation omitted). The insured's attorney "should seek to act in the best interest of the Insured, which usually means insuring that if there is a judgment, it will be covered by the Insurer." *Id.* In some cases, the attorney may receive a significant percentage of his or her business from the insurance company, in which case there may be an impermissible conflict of interest. *Id.* Thus, while these insurance coverage issues may *potentially* create a conflict of interest, there is no bright line rule (or rule of professional conduct) that expressly prohibits those issues from being litigated in the same court. The Court will not speculate as to whether an impermissible and un-waivable conflict of interest would arise in the state court litigation in this case.

Furthermore, the Court finds Frankenmuth's venue argument to be a red herring. Even if Perry County were the only appropriate venue in which to file a state declaratory judgment action,[7] the Court is not convinced that the *county* in which the action is filed is determinative. Rather, the Sixth Circuit has consistently focused on the state courts' ability to interpret and apply state law, as discussed below. In other words, the Court is concerned with the unique ability of a state court—any state court—to apply state law. Further, litigating the coverage issue

---

[7] The Court does not need to reach this issue, though it should be noted that the venue statute cited by Frankenmuth allows it to file in the county in which the contract was to be performed. KRS § 452.250. Also, Kentucky law allows the parties to consent to a change of venue. *See* KRS § 452.010(1). And Kentucky's intervention rules would also allow Frankenmuth to attempt intervention in the Knott Circuit Court proceeding. *See* Kentucky Rule of Civil Procedure ("CR") 24.

in a state court other than Knott Circuit Court places Frankenmuth in no worse position than resolving the issue in this Court because in either scenario, it will be litigating in two courts. But the dual state court track has the added advantage of allowing state courts to decide issues of state law.

Having addressed Frankenmuth's concerns about conflicts of interest and venue, the Court turns to the two proposed alternative remedies: a state declaratory relief action and an indemnity action filed at the conclusion of the state proceedings. A state indemnity action at the end of the state court proceeding would, in many cases, be an inferior remedy. *See Flowers*, 513 F.3d at 562 (finding that "[s]uch a delayed alternative would be worse, not better, than seeking a federal declaratory judgment"). In this case, however, the question of whether an indemnity action is even necessary is dependent on this Court's resolution of the duty to defend question. If the Court accepted jurisdiction and found that Frankenmuth does *not* owe Balis Campbell a duty to defend in the state court proceeding, then the Court would have effectively determined that there is no duty to indemnify. *See Nautilus*, 784 F. Supp. 2d at 771 ("If there is no duty to defend, then there is no duty to indemnify because the duty to defend is broader." (citation omitted)). But if the court finds that there *is* a duty to defend, it would likely necessitate an indemnity action on the back end of the state court litigation should the insured be held liable for damages.

On the other hand, a declaratory relief action in the state court is a better option than this federal declaratory action. First, the specific coverage issue before this court—whether the allegations of negligent workmanship qualify as "occurrences" under the policy—is a question of state law. True, Kentucky law may be clear on that issue, and a federal court could "confidently apply it without fear of creating conflicts with the Kentucky courts or intruding on their

jurisdiction." *United Specialty*, 936 F.3d at 400.  However, Kentucky courts remain in a superior position to interpret that state law and apply it to the facts of this case. *See, e.g.*, *Flowers*, 513 F.3d at 562. Thus, although a state declaratory action would provide Frankenmuth with the same remedy that it seeks from this Court, "the state remedy has the advantage of allowing the state court to apply its own law." *United Specialty*, 936 F.3d at 401; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (acknowledging that "Tennessee courts are in a superior position to resolve questions of state law"). Furthermore, as the Court noted in *Flowers*, a state court could combine the two actions (assuming both actions are filed in the same court), allowing a single judge to resolve all issues and avoiding the potential for confusing scheduling problems, issues with the orderly presentation of facts, and res judicata issues. *Flowers*, 513 F.3d at 562; *see also Massachusetts Bay*, 759 Fed. App'x at 441 (recognizing that the "Tennessee courts 'might also have been able to combine the two actions so that all issues could be resolved by the same judge.'" (quoting *Flowers*, 513 F.3d at 562)); *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *5 (citation omitted).  Lastly, the Court has no reason to believe that Frankenmuth's interests would not be adequately protected in a state court declaratory action or that the state court is not in a position to "define its own law in a fair and impartial manner." *Bituminous*, 373 F.3d at 816–17 (quoting *Am. Hom Assur. Co. v. Evans*, 791 F.2d 61, 63 (6th Cir. 1986)).

For these reasons, the Court finds that a declaratory action in the state court is a better remedy than this federal declaratory action, and this factor therefore weighs heavily against accepting jurisdiction.

## F.  Balancing the Factors

The Sixth Circuit has never articulated the relative weight of each *Grand Trunk* factor, acknowledging instead that the factors are not always equal. *Flowers*, 513 F.3d at 563; *Hoey*,

- 26 -

773 F.3d at 759. This Court has stated, however, that "[t]he most important consideration in exercising this discretion [under the Declaratory Judgment Act] is whether retaining jurisdiction interferes with state-court litigation." *Abundance Coal*, No. 12-39-ART, 2012 WL 3067579, at *2. While this may be true, the Sixth Circuit has also indicated that "[t]he relative weight of the underlying considerations of efficiency, fairness, and federalism will depend on [the] facts of the case." *Hoey*, 773 F.3d at 759. In other words, the Court must balance the five *Grand Trunk* factors on a case-by-case basis.

In doing so, this Court is afforded "unique and substantial" discretion. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). In this way, the Declaratory Judgment Act—with its "textual commitment to discretion, and the breadth of leeway [the Supreme Court] always understood it to suggest"—is distinguished "from other areas of law in which concepts of discretion surface." *Id.* at 286–87. Thus, federal district courts possess "unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* at 286. Further, the "facts bearing on the usefulness of the declaratory remedy, and the fitness of the case for resolution, are peculiarly within their grasp." *Id.* With this "unique and substantial" discretion in mind, the Court balances the five *Grand Trunk* factors, mindful that "[a]nother court might have made a different choice." *See Hoey*, 773 F.3d at 760 (recognizing that "[a]nother court might have made a different choice—some judges regularly decline jurisdiction in cases like this").

In this case, the first and second factors weigh in favor of accepting jurisdiction (and the first factor only slightly so). The third factor—whether the declaratory plaintiff is engaging in procedural fencing—is neutral. Given the lack of evidence to suggest procedural fencing, the Court assigns this third factor little weight. *Massachusetts Bay*, 759 Fed. App'x at 439 (citation omitted). The fourth factor is also neutral (or leans slightly against exercising jurisdiction).

Lastly, under factor five, the availability of a better alternative remedy in state court weighs heavily against accepting jurisdiction.

Against these factors, only two of which weigh in favor of exercising jurisdiction, the Court must balance "considerations of efficiency, fairness, and federalism." *Hoey*, 773 F.3d at 759. Here, these considerations weigh against exercising jurisdiction. First, the parties are involved in a common construction dispute in state court. If the Court accepts jurisdiction, it forces the parties to engage in litigation on two fronts "to receive a simple declaration of rights under an insurance contract—a matter that could easily be handled by the state courts that are more familiar with Kentucky insurance law in the first place." *Grange*, 565 F. Supp. 2d at 791. In fact, the state court "is positioned to decide every issue amongst all the parties in this matter, allowing the parties to fight this battle on a single front." *Id.* Furthermore, an ongoing federal declaratory action could certainly create delays in the state court proceeding, or confusion as to scheduling, discovery, and other matters. It would also deprive a state court of the opportunity to interpret and apply its own law. Moreover, since the issue here is not one of federal law but rather of state-regulated insurance contracts, an issue which this Court has no special interest, this Court is not a superior forum. By declining to exercise its substantial discretion to hear the case, this Court does not "rob" the insurance company of anything. *See id.* at 791–92. Frankenmuth has an adequate (even superior) remedy via a state court declaratory judgment action or possible intervention in the state court proceeding. *Id.* at 792.

Finally, the Court notes that Frankenmuth's post-complaint efforts to narrow the scope of the requested relief increases the potential for piecemeal litigation. Remember, Frankenmuth's amended complaint very clearly asked the Court to declare it had no duty "to defend or indemnify" Balis Campbell under the CGL/umbrella policy. [R. 30, p. 23] But it subsequently

- 28 -

reframed the relief sought from this Court, asking only for a determination on the duty to defend under the CGL/umbrella policy and a clarification of the scope of the $25,000 coverage limit. [R. 42, p. 4; R. 46, p. 3] This fragmentation of the issues has the potential for additional residual litigation on the back end of the state proceedings. For instance, if this Court accepts jurisdiction and determines that Frankenmuth is obligated to defend Balis Campbell in the state court proceeding, it leaves open the question of whether Frankenmuth must also indemnify Balis Campbell should Balis Campbell be found liable in the state proceeding. To resolve that question, additional litigation would likely ensue in state court. Simply put, Frankenmuth's decision to narrow the issues before this Court creates even greater potential for residual, future issues. While the Court gives Frankenmuth the benefit of the doubt that it had no improper motive by filing in this Court, *see supra* Section II(C), it questions Frankenmuth's motivations concerning its post-complaint narrowing of the relief requested and whether those actions are consistent with the principles of efficiency, fairness, and federalism. This Court has taken a "good look" at the issues presented and will exercise it substantial discretion to decline jurisdiction and allow the state courts to resolve all of the insurance coverage questions. *See Hoey*, 773 F.3d at 759 ("The essential question is always whether a district court has taken a good look at the issue and engaged in a reasoned analysis of whether issuing a declaration would be useful and fair." (citation omitted)).

Further, the Court is mindful that it should not exercise jurisdiction under the Declaratory Judgment Act "unless it serves a useful, practical purpose." *Grange*, 565 F. Supp. 2d at 792 (quoting *Panhandle E. Pipe Line Co.*, 177 F.2d at 944). "[I]f our decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, we are neither furthering the interests of justice nor preserving parties' resources." *Id.* at 785 (citations omitted).

Accordingly, for the reasons set forth above, the Court finds that the *Grand Trunk* factors, when considered together and balanced against considerations of efficiency, fairness, and federalism, weigh against the exercise of jurisdiction.

## III. CONCLUSION

As set forth above, under the facts of this case, only two of the five *Grand Trunk* factors weigh in favor of accepting jurisdiction, one factor is clearly neutral, one factor is neutral or can even be described as weighing slightly against exercising jurisdiction, and one factor weighs strongly against exercising jurisdiction. Having balanced these five factors with "underlying considerations of efficiency, fairness, and federalism," and having considered the unique facts of this case, the Court will exercise its broad discretion to decline jurisdiction over this matter under the Declaratory Judgment Act. *See Wilton*, 515 U.S. at 286 (recognizing that district courts are afforded "unique and substantial" discretion under the Declaratory Judgment Act).

Accordingly, **IT IS HEREBY ORDERED** as follows:

1.    Balis Campbell's Motion to Dismiss [**R. 43**] is **GRANTED**.

2.    The Court declines to exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201, and this matter is **DISMISSED WITHOUT PREJUDICE**.

       The **Clerk of Court** shall **STRIKE** this case from the Court's active docket.

This the 30th day of December, 2020.

CLARIA HORN BOOM,
UNITED STATES DISTRICT COURT JUDGE
EASTERN AND WESTERN DISTRICTS OF
KENTUCKY